NO. 94-355

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

WRB-WEST ASSOCIATES, INC., a Texas
Corporation; and WRB-WEST ASSOCIATES,
JOINT VENTURE, a Texas Joint Venture,

       Plaintiffs and Appellants,

   v.

MADISON ADDITION INVESTMENTS LIMITED
PARTNERSHIP, an Idaho Limited
Partnership; JOHN COSTELLO; JERALD S.
SCHMIER; FRED J. HAHN; RICHARD G. HAHN;
ROCCO P. CIFRESE, M.D.; SARA ASHMAN
CIFRESE, M.D.; P.A. PENSION TRUST;
ROBERT E. FARNAM; WILLIAM D. FALER;
CHARLES A. HOMER; BRUCE SOELBERG; FRANK
GUSTIN; GAYLORD W. SMITH; KEVIN T.
SULLIVAN; TONY MARCON; and CHUCK BECK,

       Defendants, Respondents,
       and Cross-Appellants.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
             In and for the County of Gallatin,
             The Honorable Larry W. Moran, Judge presiding.


COUNSEL OF RECORD:

      For Appellants:

        Michael J. Lilly, Berg, Lilly, Andriolo
        & Tollefsen, Bozeman, Montana

      For Respondents:

        John G. Crist, Dorsey & Whitney,
        Billings, Montana  (for Madison Addition
        Investments and John Costello)

        James M. Kommers, Kommers, Kasting & Roth,
        Bozeman, Montana  (for Individual Limited
        Partners)


Submitted on Briefs:  December 22, 1994

Decided:  April 25, 1995

Filed:

Justice Terry N. Trieweiler delivered the opinion of the Court.

Plaintiffs WRB-West Associates, Inc., and WRB-West Associates, Joint Venture, filed this complaint in the District Court for the Eighteenth Judicial District in Gallatin County to recover damages from the defendant, John Costello, which it alleged were caused by breach of Costello's fiduciary duty. Following a nonjury trial, the District Court found that Costello had no fiduciary duty to the plaintiffs and entered judgment for the defendants. Plaintiffs appeal from the District Court's findings of fact, conclusions of law, and judgment. We affirm the District Court.

The dispositive issue on appeal is:

Did the District Court err when it concluded that John Costello did not have a realtor/client relationship with the plaintiffs in 1989?

<u>FACTUAL BACKGROUND</u>

In the early 1980s, Lewis Robinson and Robert Russell formed West Associates Limited Partnership to develop the Madison Addition property. The Madison Addition is a subdivision of single family and duplex lots, and planned unit developments located in West Yellowstone. West Associates sold the Madison Addition property to WRB, Inc., and WRB-JV in 1984. Lewis Robinson and Albert Walker were initially the principal shareholders in WRB, Inc., and the principal partners in WRB-JV. As a result of the sale in 1984, WRB, Inc., owned the single family and duplex lots in the Madison

Addition, and WRB-JV owned the planned unit development (PUD) property located in that subdivision.

Costello was a licensed real estate broker in West Yellowstone with whom WRB, Inc., executed a written listing agreement in 1985. It consisted of three pages. The first page was prepared by Robinson and provided that the term for the agreement would be from May 1, 1985, to November 1, 1985. Costello prepared an addendum to the agreement which specifically limited his obligations to the term of the listing agreement. After the agreement expired, no additional agreement was executed and Costello sold no real estate for WRB, Inc.

On January 16, 1985, WRB-JV and Costello executed an agreement which authorized Costello to act as a broker for one of the four PUDs owned by WRB-JV. That agreement expired, by its terms, on January 14, 1986. No further agreement was executed by those parties after it expired.

In October 1984, WRB, Inc., and WRB-JV (referred to collectively as WRB) had borrowed $4,200,000 from Deseret Federal Savings and Loan to finance development in the Madison Addition. Repayment was secured by a mortgage interest in the Madison Addition property.

In 1988, WRB failed to make the loan payments agreed upon and Deseret filed an action to foreclose on the secured property. At the time of the initial foreclosure action, WRB still owed over $2,000,000 to Deseret. In addition, WRB was substantially indebted

to other creditors whose loans were also secured by the same property. In 1988, an appraisal of the Madison Addition property indicated a value of only $1,057,000.

In 1989, Costello learned that Deseret was selling its note and mortgage on the Madison Addition property for the amount of the 1988 appraisal. Costello contacted others and suggested that they purchase the note and mortgage. Together they formed a limited partnership known as Madison Addition Investments Limited Partnership (MAILP), which ultimately purchased the note and **mortgage for** $1,057,000. The purchase and sale was completed on September 11, 1989.

On September 7, 1989, the WRB entities filed a petition for Chapter 11 bankruptcy protection. However, the Chapter 11 plan failed when WRB was unable to sell the necessary number of lots to fund it. Therefore, the bankruptcy proceeding was dismissed and the stay of foreclosure proceedings vacated. MAILP concluded Deseret's foreclosure action; obtained a judgment against WRB; purchased the Madison Addition property at foreclosure sale; and, after selling individual lots, obtained a deficiency judgment.

In this suit, the WRB entities alleged that their broker/ seller relationship with Costello extended to 1989, and therefore, that he had a fiduciary relationship which was breached when he negotiated the purchase of their note from Deseret. Although no written agreement was in effect at that time, WRB alleged that the previous agreements were extended based on the fact that Costello

continued to act as WRB's broker. They alleged that because of Costello's breach of his fiduciary duty, they were denied the opportunity to purchase their own note for the amount paid by MAILP, and thereby, lost the opportunity to reduce their liability by $2,000,000. However, the District Court held that based on the statute of frauds there could be no real estate brokerage relationship, and found that the last agreement between the parties expired by its own terms in 1986. The District Court also held that Costello's conduct was not sufficient to establish a broker/seller relationship. WRB appeals from the District Court's findings of fact, conclusions of law, and judgment.

DISCUSSION

Did the District Court err when it concluded that John Costello did not have a realtor/client relationship with the plaintiffs in 1989?

We review a district court's findings of fact to determine whether they are clearly erroneous. *Interstate Prod Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 322, 820 P.2d 1285, 1287. In doing so, we first consider whether the findings are supported by substantial evidence. If the findings are supported by substantial evidence, we determine if the district court misapprehended the evidence. Finally, if the findings are supported by substantial evidence, and that evidence has not been misunderstood, we may still conclude that a finding is clearly erroneous if a review of the record

5

leaves this Court with a definite and firm conviction that a mistake has been made. *DeSaye*, 820 P.2d at 1287.

We review conclusions of law to determine whether they are correct. *In re Marriage of Barnard* (1994), 264 Mont. 103, 106, 870 P.2d 91, 93 (citing *In re Marriage of Burris* (1993), 258 Mont. 265, 269, 852 P.2d 616, 619).

WRB contends that the District Court erred by concluding that Costello was not their realtor in 1989, and therefore, had no fiduciary duty that could be breached.

The court found that no written agreement existed in 1989, as required by § 28-2-903(1), MCA, and that the previous written agreements were not extended because the parties had not satisfied the requirements of § 28-2-1602, MCA, for altering a contract by extending its term. The court concluded that the parties could not have created an employment agreement by conduct because the statute of frauds prohibits such a result. Furthermore, the court found that even if a contract could be extended or created by conduct, the evidence was not sufficient to prove the parties consented to do so. We agree with the District Court's findings and conclusions.

Section 28-2-903, MCA, provides in relevant part that:

(1) The following agreements are invalid unless the same or some note or memorandum thereof is in writing and subscribed by the party to be charged or his agent:
. . .
(e) An agreement authorizing or employing an agent or broker to purchase or sell real estate for compensation or a commission.

6

Section 28-2-1602, MCA, provides that "[a] contract in writing may be altered by a contract in writing or by an executed oral agreement, and not otherwise." The District Court correctly found that there was no written listing agreement, nor a written modification of the previous agreement in effect between the parties in 1989.

We have previously held that a listing agreement must be in writing and cannot be orally extended. *Kraji v. Hodson* (1992), 254 Mont. 262, 264, 836 P.2d 1234, 1236. In order to be enforceable, a listing agreement, and any subsequent modification of that agreement's terms, must be reduced to writing and signed by the party to be bound thereby. *Carnell v. Watson* (1978), 176 Mont. 344, 347-48, 578 P.2d 308, 310. We have also recognized that a real estate broker does not obtain general authority, but has only that authority specifically authorized by a contract. *Martin v. Vincent* (1979), 181 Mont. 247, 251, 593 P.2d 45, 47.

WRB contends that based on dicta in *Property Brokers, Inc. v. Loyning* (1982), 201 Mont. 309, 312, 654 P.2d 521, 523, an exception to the general rule may apply if the surrounding circumstances indicate that the parties waived the expiration provision in a listing agreement. We cited *Snyder v. Schram* (Or. 1976), 547 P.2d 102, for that rule.

However, *Snyder* is factually distinguishable. In *Snyder*, the plaintiff broker sued to recover a commission for a sale based on

7

negotiations which commenced during the term of the agreement and continued beyond its expiration date. That court recognized that the defendants encouraged the plaintiff to continue negotiations, that the plaintiff kept them informed, and that the defendants eventually sold the property for substantially the same terms negotiated by the broker. These facts were sufficient to establish that the defendants waived the original termination date. *Snyder*, 547 P.2d at 104.

Substantial evidence supports the District Court's findings that this exception does not apply to the facts of this case.

Costello did not offer to act as WRB's broker in writing or orally in 1988 or 1989. He did no advertising of WRB property during either year, and the only written communication between the parties during that time was Robinson's January 12, 1988, memorandum advising that single family and duplex lots were being withdrawn from the market. Costello sold no property during that period; no one offered to buy any of WRB's property from Costello during that time; and he had little communication of substance with any of WRB's principals during those two years. The District Court's finding that the contractual relationship between Costello and WRB was not extended to 1989 by Costello's conduct was supported by substantial evidence and is not clearly erroneous.

Because the District Court's conclusion that Costello had no brokerage relationship with plaintiffs during 1989 is dispositive of plaintiffs' claims, and because we affirm that conclusion, we

8

will not address the remaining issues raised on appeal, and by cross-appeal.

The judgment of the District Court is affirmed

_____
Justice

We concur:

_____

_____

_____

_____
Justices